Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Demandante-Peticionario<br><br>v.<br><br>SUCN. CARMEN LILIA FLORES T/C/C CARMEN LILIA FLORES DE MIRANDA T/C/C CARMEN LILIAN LILIA FLORES T/C/C CARMEN LILIAN FLORES PAGÁN T/C/C CARMEN FLORES, ET AL<br><br>Demandada-Recurrida | KLCE202400830 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: KCD2017-0577 (604)<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de septiembre de 2024.

Comparece ante este tribunal apelativo, el Banco Popular de Puerto Rico (BPPR o el peticionario) mediante el recurso de *certiorari* de epígrafe solicitándonos que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 17 de junio de 2024, notificada el 25 de junio siguiente. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a la *Moción de Reconsideración* instada por el peticionario en la que impugnó lo resuelto por el TPI en la *Resolución* del 18 de octubre de 2023, notificada el 20 de octubre posterior, en la que se denegó la *Moción de Sentencia Sumaria* presentada por el BPPR.

Por los fundamentos que expondremos a continuación, denegamos el auto de *certiorari* solicitado.

**I.**

El 4 de abril de 2017, el BPPR instó una demanda sobre ejecución de hipoteca por la vía ordinaria contra la Sucesión de Carmen Lilia Flores, la Sucesión de Francisco David Miranda y la Sra. Carmen Ivelise Miranda Flores (señora Miranda Flores o la recurrida), entre otros. Alegó que el Sr. Francisco Miranda y la Sra. Carmen Lilia Flores obtuvieron un préstamo revertido (*reverse mortgage*) por $81,000 de principal más intereses el cual fue garantizado mediante pagaré hipotecario sobre el inmueble localizado en la Urbanización Puerto Nuevo del Barrio Monacillos de Río Piedras.

Se adujo que el banco era la parte con derecho a exigir el cumplimiento del pagaré y que al fallecer ambos deudores se aceleró la deuda conforme a los acuerdos estipulados en la misma. Alegó que **la deuda asciende a $271,262.17** de principal, más los intereses, y es una líquida, vencida y exigible. Además, especificó que, previo a la presentación de la demanda, **se notificó** al Secretario del Departamento de la Vivienda y Desarrollo Urbano de Estados Unidos (HUD, siglas en inglés) y a la parte demandada al menos treinta (30) días para subsanar el incumplimiento.[1]

El 28 de julio de 2017, la señora Miranda Flores presentó la contestación a la demanda en la cual indicó ser la única y universal heredera del Sr. Francisco Miranda y de la Sra. Carmen Lilia Flores. En la referida contestación aceptó varias de las alegaciones, pero negó la mayoría de estas. En lo pertinente al recurso que nos ocupa, en el acápite 17 expresó "... La parte demandante no tiene standing para instar la presente acción y es tenedor de mala fe de un pagaré alegadamente extraviado que está en posesión de terceros."[2] Asimismo, incluyó, entre otras defensas afirmativas, que: la parte

---

[1] Véase, Apéndice del Recurso, a la pág. 00010.
[2] *Íd.*, a la pág. 00016.

demandante-peticionaria no es el tenedor del pagaré; el BPPR no posee una acción legitimada o "standing" para radicar el pleito; y que **el banco no ha cumplido con las disposiciones de notificar al Departamento de Vivienda y Desarrollo Urbano de los Estados Unidos**, HUD por sus siglas en inglés, (Department of Housing and Urban Development), antes de radicar el presente litigio a tenor con la Sección 225 del National Housing Act 12 U.S.C. 1715z-20 y sus regulaciones (24 CFR parts 200 and 206). [Énfasis nuestro]

Luego de varios trámites procesales, que no son necesarios consignar en el presente escrito, el 17 de febrero de 2023 el peticionario instó una *Moción de Sentencia Sumaria* en la que propuso dieciséis (16) hechos incontrovertidos.[3] Entre estos, indicó ser el actual tenedor de buena fe del pagaré, objeto de la presente reclamación, luego de haber obtenido sentencia a su favor en el caso K CP2015-0183 donde se alegó que el Pagaré suscrito por los deudores se había extraviado estando en su posesión. En vista de ello, el 3 de febrero de 2022, el Alguacil del Tribunal firmó el Pagaré sustituto y la Escritura de Instrumento Negociable ... así quedando debidamente sustituido el Pagaré extraviado."[4] Asimismo, señaló haber cumplido con el requerimiento de notificación a HUD según requiere la legislación federal.

La señora Miranda Flores se opuso al petitorio sumario y argumentó que, en el caso K CP2015-0183, el edicto publicado para emplazar era nulo al incumplir con lo dispuesto en el Reglamento

---

[3] Entre los documentos anejados están: *First Mortgage Note* de November 21, 1994, firmado por el Alguacil el 3 de febrero de 2022; Escritura Núm. 525 sobre Primera Hipoteca del 21 de noviembre de 1994; Certificación de Propiedad Inmueble expedida el 22 de agosto de 2022; Declaración Jurada suscrita por Andrés Concepción Lizardi, Oficial Autorizado de **Sun West Mortgage Company, Inc.** del 16 de septiembre de 2022; Sentencia en Rebeldía, Caso K CP2015-0183, del 20 de abril de 2017; Mandamiento de Sustitución de Pagaré Extraviado expedido el 20 de mayo de 2019: Orden de Sustitución de Pagaré Extraviado del 15 de mayo de 2019; Escritura Núm. 3 sobre Sustitución de Pagaré del 3 de febrero de 2022; y Reverse Mortgage Payoff Statement del 21 de diciembre de 2022 con el logo de **Sun West Mortgage Company, Inc.**

[4] *Íd.*, a las págs. 00024-25.

Hipotecario.[5] Asimismo indicó que el BPPR, en la *Moción de Sentencia Sumaria,* por primera vez arguyó ser el tenedor de buena fe del pagaré, lo que constituye una enmienda a las alegaciones en una petición de sentencia sumaria resultando improcedente en derecho.

Enfatizó, además que, de los documentos incluidos por el peticionario en su *Moción de Sentencia Sumaria,* no surge el cumplimiento con las disposiciones de HUD referentes a las Hipotecas Revertidas (*Home Equity Conversion Mortgage*) sobre las notificaciones al deudor, a los posibles herederos y al Secretario de Vivienda Federal para iniciar el proceso de ejecución.

El 15 de mayo de 2023, el peticionario incoó una réplica a la referida oposición en la cual expresó lo siguiente: que la contestación incumple con la Regla 36.3(b) de las de Procedimiento Civil; que el presente caso no es el foro correcto para solicitar la nulidad de la sentencia del Caso K CP2015-0183; que el Reglamento Núm. 8814 fue aprobado el 31 de agosto de 2016, luego de haberse publicado el edicto en el referido caso; y que el Banco tiene legitimación activa a tenor con lo que preceptúa la Sección 2-309 de la Ley de Instrumentos Negociables y Transacciones Bancarias, intitulada *Cumplimiento de un instrumento perdido, destruido o robado,* 19 LPRA sec. 609, más es el tenedor del pagaré sustituto. La recurrida instó una dúplica.

Así las cosas, el 18 de octubre de 2023, el TPI emitió la *Resolución* recurrida, notificada el 20 de octubre siguiente. En esta, el foro primario consignó trece (13) hechos no controvertidos, y como controversia plasmó:[6]

> Si el Banco Popular de Puerto Rico cumplió con la reglamentación federal dispuesta en 24 CFR sec. 206.1, *et seq.*, específicamente en cuanto a las notificaciones y términos dispuestos en la reglamentación para

---

[5] *Íd.*, a la pág. 00083. Se advierte que aunque en el escrito se hace referencia a un anejo, el peticionario no lo incluyó en el apéndice.
[6] Véase, Apéndice del Recurso, a las págs. 000129-000130.

proceder con la ejecución de hipotecas revertidas garantizadas por el HUD.

A su vez, el TPI razonó que este caso no es el pleito adecuado para solicitar la nulidad de la Sentencia dictada en el Caso K CP-2015-0183 y dispuso que le asiste "la razón a la señora Miranda Flores en cuanto a la falta de acreditación del BPPR de haber cumplido con las reglamentaciones federales aplicables a los procesos de ejecución de hipotecas revertidas."[7] Indicó que "[c]omo bien sostiene la señora Miranda Flores, no solo la moción de sentencia sumaria está desprovista de haber cumplido todo lo anterior, sino que no obra prueba alguna al respecto en todo el expediente. El BPPR ha descansado en una alegación en su demanda en la cual expresó de manera general haber cumplido con las obligaciones mencionadas. (nota al calce omitida). Cabe destacar que Miranda Flores ha reclamado en prácticamente todas sus mociones que el BPPR ha incumplido con la reglamentación federal."[8]  Por lo que, el TPI entendió que existe un hecho material que impide disponer el caso por la vía sumaria y se hace necesario recibir prueba al respecto. En consecuencia, declaró *No Ha Lugar* a la Moción de Sentencia Sumaria del BPPR.

Inconforme, el peticionario presentó una *Moción de Reconsideración,* el 7 de noviembre de 2023, en la que nuevamente especificó haber cumplido con las regulaciones sobre notificación a HUD. En el referido escrito, **incluyó por primera vez**, una comunicación en inglés y en español, intitulada *REPAYMENT NOTICE/AVISO DE PAGO* suscrita por *HECM Servicing Department Sun West Mortgage Company, Inc.* del 20 de octubre de 2014 dirigida a *To Estate of Carmen Flores*.[9] Además, anejó una misiva suscrita por el Lcdo. Miguel A. Pérez Vargas del 5 de noviembre de 2014

---

[7] *Íd.*, a la pág. 000137.
[8] *Íd.*
[9] *Íd.*, a las págs. 000144-000153.  Se le anejó la Declaración de Pago (*Payoff Statement*).

acusando recibo de la antedicha carta en representación de la señora Miranda Flores. También acompañó documentos identificados como Anejos 2, 5 y 6 los cuales, a su entender, demuestran haber notificado a HUD la muerte de la Sra. Carmen Flores y que la agencia le otorgó dos (2) extensiones de tiempo para instar la acción hipotecaria.[10]

La señora Miranda Flores se opuso a la reconsideración y en su escrito, argumentó que la misma resultaba ser tardía y que si se aceptara "la realidad es que la misma trae prueba extrínseca, creada por un tercero que no ha sido identificado, ni se ha establecido su relación en derecho con el BPPR, y mucho menos ninguno de los documentos es prueba de que se dio fiel cumplimiento a las regulaciones de HUD."[11]

El 17 de junio de 2024, notificada el 25 de junio siguiente, el foro *a quo* emitió una *Resolución* declarando No Ha Lugar el petitorio del BPPR. En esta, el foro primario determinó que existía justa causa para la demora en la presentación de la moción de reconsideración, más concluyó que de los Anejos 2, 5 y 6 no surge que el banco haya cumplido cabalmente con las notificaciones a HUD y si ejerció la acción hipotecaria dentro de las prórrogas concedidas por HUD. Al respecto, el TPI expresó que el Anejo 2 es una captura de pantalla del sistema HERMIT (*Home Equity Reverse Mortgage Information Technology*) el cual es un portal cibernético usado por los acreedores para comunicarse con HUD. No obstante, entendió que ello no constituye la evidencia que acredite que hubo una notificación efectiva a HUD dentro de los 60 días de haberse vencido la hipoteca, es decir, de la muerte del deudor.[12] Esto, previo a instar la presente demanda. A su vez, el foro recurrido razonó que "A diferencia del

---

[10] *Íd.*, a las págs. 000160 y 000173-000174.
[11] *Íd.*, a la pág. 000179.
[12] *Íd.*, a la pág. 0006.

anejo 2, previamente discutido, en el caso de los anejos 5 y 6 sí surge información discernible de la cual se desprende claramente que la última extensión concedida automáticamente por el sistema vencía el **23 de septiembre de 2015**. La demanda de autos se presentó el **4 de abril de 2017**; para entonces, había vencido con creces la extensión autorizada por *HUD*. No obstante, BPPR aduce que, al no recibir respuesta de parte de la Sucesión, comenzó el proceso de ejecución de hipoteca **el 11 de junio de 2015**, "según consta en el récord del tribunal". **Ante la discrepancia en fechas, es necesario que la parte demandante aclar[e] a qué se refiere con haber comenzado el proceso de ejecución, y si esto fue dentro del término de extensión concedido por HUD**."[13]

Todavía en desacuerdo, el BPPR acude ante este foro apelativo mediante el recurso de *certiorari* de epígrafe imputándole al foro *a quo* haber incurrido en los siguientes errores:

> ERRÓ EL TPI AL DETERMINAR *MOTU PROPRIO* UNA DEFENSA RENUNCIADA POR LA PARTE DEMANDADA.
>
> ERRÓ EL TPI AL NO CONSIDERAR LA PRUEBA ANEJADA QUE DEMUESTRA QUE BANCO POPULAR CUMPLIÓ CON LA REGLAMENTACIÓN FEDERAL DISPUESTA EN 24 CFR SEC. 206.1, *ET SEQ.*
>
> ERRÓ EL TPI AL CONSIDERAR UNA OPOSICIÓN A SENTENCIA SUMARIA QUE INCUMPLE CON LA REGLA 36.3 DE PROCEDIMIENTO CIVIL Y QUE NO CONTRAVINO NINGUNO DE LOS HECHOS PRESENTADOS COMO INCONTROVERTIDOS.

El 16 de agosto de 2024, emitimos una *Resolución* en la que, entre otros asuntos, le concedimos a la parte recurrida el término de diez (10) días para expresarse. El 27 de agosto siguiente, la parte recurrida presentó su *Oposición a Petición de Certiorari*, por lo que nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

---

[13] *Íd.*, a las págs. 0007-0008. Énfasis y subrayado en el original y nuestro.

El 3 de septiembre de 2024, el peticionario presentó una moción intitulada *Oposición a Moción de Desestimación.* De una lectura de dicho escrito surge que el mismo es una réplica a la *Oposición a Petición de Certiorari,* por ende, damos dicha moción por no puesta. Nuestro reglamento no permite una réplica a la oposición.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

Todo recurso de *certiorari* presentado ante nuestra consideración debe ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil (32 LPRA Ap. V. R. 52.1). En apretada síntesis, la referida norma dispone que el recurso de *certiorari* **solamente será expedido** para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, al amparo de las Reglas 56 y 57 o de la <u>denegatoria de una moción de carácter dispositivo</u>.[14]

A su vez, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar, de conformidad con la Regla 52.1 de las de Procedimiento Civil, *supra*, previo a ejercer debidamente nuestra facultad revisora sobre un caso, es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento (4 LPRA Ap. XXII-B) se justifica nuestra intervención, pues distinto al recurso de apelación, **este tribunal posee discreción para expedir el auto** el *certiorari. Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999). Por supuesto esta discreción

---

[14] No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

no opera en el vacío y en ausencia de parámetros que la dirija. *I.G. Builders et al. v. BBVAPR,* supra; *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580 (2011).

Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).[15] Así, pues, se ha considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Íd.*[16]

A estos efectos, la Regla 40 de nuestro Reglamento, *supra,* enumera los criterios que debemos considerar al momento de determinar si procede que expidamos el auto discrecional de *certiorari. I.G. Builders et al. v. BBVAPR, supra.* Dicha regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

---

[15] Citas omitidas.
[16] Citas omitidas.

Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, **si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra** el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).

### III.

El peticionario señaló que erró el TPI al establecer una defensa *motu proprio* la cual fue renunciada por la señora Miranda Flores.[17] También indicó que el foro recurrido falló al no considerar los documentos que demuestran que cumplió con la reglamentación federal sobre notificaciones a la HUD y al considerar la oposición a sentencia sumaria, la cual incumple con las formalidades dispuestas en nuestro ordenamiento procesal.

De entrada, advertidos que se recurre de una moción de carácter dispositivo, la cual es una de las instancias que podemos atender al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, analizados los argumentos esbozados por el peticionario en el recurso, al amparo de los Regla 40 de nuestro

---

[17] Respecto a este señalamiento se hace meritorio destacar que de una simple lectura de la contestación la demanda surge que efectivamente la recurrida levantó dicha defensa.

Reglamento, *supra,* no encontramos que estén presentes los criterios allí enunciados para intervenir con el dictamen objetado.

Luego de un análisis de *novo* de las mociones presentadas, no surge del dictamen recurrido que el foro recurrido haya abusado de su discreción o se haya equivocado en la interpretación o aplicación de las normas procesales, o del derecho sustantivo relacionado a la controversia de autos. Además, como es harto conocido, de existir una controversia real y sustancial sobre hechos relevantes, no procede conceder una solicitud de sentencia sumaria. *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023). Es decir, si surgiese alguna duda en cuanto a la existencia de una controversia sobre algún hecho material, esta debe resolverse en contra de la parte promovente. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004).

Nótese en particular que, como bien señaló el TPI en la *Resolución* recurrida, el peticionario en su moción de sentencia sumaria **no presentó documentos que evidenciaran el cumplimiento con la regulación federal** relativa a la notificación a HUD y a la autorización que esta agencia debe otorgar para proceder con la presentación de la acción hipotecaria. Incluso, falló en poner en condición al tribunal para conocer sobre la pertinencia de la corporación *Sun West Mortgage Company, Inc.* Además, coincidimos con el análisis realizado por el TPI respecto al alcance e interrogantes que surgen de los documentos anejados a la solicitud de reconsideración.

Puntualizamos, que el peticionario no puede obviar que las hipotecas revertidas forman parte de un sistema de préstamos complejo y **muy regulado por el gobierno federal**, que busca proveer una opción viable para la comunidad de edad avanzada. Debido a su metodología particular, el cumplimiento de sus requisitos es indispensable para poder iniciar el proceso de ejecución de este tipo de hipoteca. Por consiguiente, evidenciar el

cumplimiento estricto de dichos requisitos resulta crucial para garantizar el propósito social de la legislación federal que regula su creación. Por tanto, previo a instar una demanda de ejecución de una hipoteca revertida, el acreedor hipotecario está obligado a cumplir puntillosamente con la legislación federal.[18]

En virtud de lo anterior, precisa advertir que el tribunal de primera instancia goza de amplia discreción para pautar el manejo de los casos ante su consideración, a fin de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correctamente. *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664-665 (2000).

Por último, recalcamos que el tribunal dictará sentencia sumaria si procede como cuestión de derecho. De igual forma, reiteramos que no está obligado a considerar una petición desestimatoria sumaria si existe algún hecho material o sustancial que impida resolver el pleito por la vía sumaria.

**IV.**

Por los fundamentos antes expuestos, procede denegar el recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[18] Véase, *Finance of America Reverse, LLC v. Carmona-Vargas*, 288 F. Supp. 3d 500, 503 (2018). Este tipo de hipoteca está asegurado a través de un programa del HUD. Véase, 12 USC sec. 1715z-20 (ley orgánica), y 24 CFR sec. 206.1, *et seq.*